As courts aware, this involves a failure to promote a retaliation claim. The plaintiff in this case introduced evidence showing that Coca Cola's justification for its refusal to consider him even eligible for promotion was a pretext, and it was accomplished by the record. In addition, this is one of the world's largest corporations, and we have no written policies on what he needs to do to be considered eligible for promotion. We have an employee who has performed at the top for 10 years. He has no disciplinary record. He's saying national origin and age. He got hired when he was 46, so he's over the age when he starts. On the national origin, what evidence in the record establishes that he suffered discrimination on national origin? The record shows he's Nicaraguan by birth. He's a naturalized U.S. citizen. English is his second language, and it is by circumstantial evidence the same as age. When they're originally hired, he is 46. He's hired with a group of older people in their 40s and late 30s for the LAM position. But then, when they start moving to the sales associate position, they then start bringing in the college students, and everyone that was brought in was young and Caucasian. I have a question on that, because Alejandro Blackman, there seems to be evidence in the record that he went to college. He's bilingual, and he seems to have gone to a Mexican college. Most people don't go by Alejandro, unless they've got some sort of association there. I think Coca-Cola said somewhere in the record that he was Hispanic. He was not in the Phoenix region. He was pulled from, I'm not really familiar with that record, but he was pulled from a different region. So what does the record show about his, since we're talking about that it's national origin, we talk about the people that are white and their ages, but what about him? He seems to be Hispanic, like your client. He is, but he was not involved in any of the, within the Phoenix area. And the other problem, and that's talking about the Burger King promotion, the problem with Mr. Zelaya that he raised wasn't that Mr. Alejandro was not qualified, it's that when Mr. Zelaya tried to apply, he was told it was not open to Phoenix. It was open to other markets, but not Phoenix in particular. Coca-Cola claims we got his resume and he did apply. Mr. Zelaya's testimony is he was not allowed to apply. He tried and was not allowed to follow through. Well, he wasn't on a readiness list, and so we've got that issue of his, he's supposed to come up with a plan more than one time. But I have a, Clutis, Hess, and Miller all received higher ratings on their performance reviews than Mr. Zelaya. And Mr. Blackman had more experience with the Latin American market than Mr. Zelaya. Where is your evidence of pretext regarding those promotions? What Coca-Cola has done is a circular argument. They say, well, you have to be on the releasable list in order to get promoted. And then they say, if you're not on the releasable list, you're not qualified. However, what do you have to do to get on the releasable list, and do you even have to be on the releasable list? What we received was nothing but contradictory evidence and statements by Coca-Cola. Beth Hufford says, well, you can't get on there if you only have an MR rating. It's not true. The record shows many employees were on there who had MR ratings. In fact, Mr. Zelaya is now an ME rating under Mr. DiLeonardo, and he's still not on the releasable list. So, you know, they try to peg it to the, well, you're on MR. Well, that's not true. Then they say, well, you were a LAM and you weren't considered to be eligible for promotion. That's not true. He did get promoted to LAM 2. Mr. Well, and he also made it to an SA, too. Yes. So he started as a LAM, then he went to a LAM 2, then he made it to the SA. But at the time that he made it to the SA, I think that's where they started saying, okay, we're going to make you an SA, but you've got areas that you need to improve on. Right? Isn't that where it first started? Yes. And Mr. Byrne and Mr. Zelaya both say, I completed the development plan. Ms. Hufford says, you can't get on the releasable list unless you've developed, unless you've done your development plan. Mr. Zelaya did not do the development plan. Her supervisor, Pat Ragland, says that assessment had nothing to do with the releasable list. Michael Byrne says the assessment had nothing to do with promotion. And Michael Byrne and Mr. Zelaya both say he completed that development plan. Well, he was asked more than once, though. There's more than one plan that we're talking about. There's a first, I think, and the second, and then he gets into the PIP area. Ms. Hufford, and I'm sorry, I want to reserve five minutes. Okay. Ms. Hufford was clear, and Coca-Cola was clear when it responded to the EEOC charge, he was not considered eligible for promotion because he did not complete the assessment, the development plan originating from the assessment. We established evidence that he did do that. In addition, Ms. Hufford was claiming Mr. Zelaya was not promoted because he never completed the other development plans. In her deposition, I confronted her with the record showing he had completed development plans. He was two months late one time, but his region had expanded, so his region was literally a quarter of the state of Arizona. That was one of the reasons, but there were others, and they haven't been refuted, have they? What happened when they talked about the telephone call and he put a dime on the desk? He did, because the charge was... Did it happen? Eight cents.  I knew it hadn't been denied, at least in the record. Then did you have a problem about some other notes that he put on the desk? He'd asked her to do something? She'd asked him to do something? And he said, there's no reason to do it because I'm not going to get promoted because you people are biased, so I won't do it. No, he did it. He did not... He objected to doing it and said it's not worth it, but he did it. It's like doing it under protest. He still did it. And the other problem, we have Gordon Nygaard, who's approximately the same age, and he's not being promoted. So they can't say, well, it's just his behavior. The other thing I want to point out is Coca-Cola changed its rationale. It starts out by saying he refused to complete the development plans. As the course of discovery goes on, suddenly they realize, well, he did complete these development plans. And so now the story is, well, he's not qualified. But if you take the qualification angle and you look at it, it doesn't pass muster because he... and the biggest part is at the end. He now meets and exceeds under Mr. D. Leonardo, and he's still not on the releasable list. But three women who are in their early 20s, who have less than two years' experience, who have lower ratings, their MR ratings, are all on the releasable list. So I ask, why? How does this happen? Mr. D. Leonardo admits that performance-wise, Mr. Zelaya is above those women, the three Caucasian females who are just out of college. He admits that these three were told that they should expect to be promoted within one to two years. I say, why is Mr. Zelaya not on the releasable list? And then he falls back to the subjective, well, he doesn't have these skill sets, which is purely subjective. And so you're asking, and I think the inference is there, to get to a jury. When they sit there and say that he has a higher objective rating, he has higher objective performance levels, but he's not considered eligible while the others are, I think that gets past summary judgment, Your Honor. Well, now that, okay, he can't, he doesn't show anywhere in the record that he was more qualified than the people that actually got the promotions. Again, it gets back to what do you call qualified? Well, they had higher ratings. They gave? There were different experience. I saw Mr. Alejandro Blackman had a two-page, pretty extensive resume, and your client filed a half-page thing on the internet. So it seems to me that your best argument is in the area of getting on the list. And that was our focus, Your Honor. Just so you know, on the Burger King, once we learned who got the job, it really wasn't an issue as much as it was he tried to apply and he was barred from applying. But in terms of getting... He barred from, well, it looked like he applied. That's what, it looked like it was a website and it looked like he applied and he didn't get it. His testimony was that he tried to apply and he was told no and he tried to get back on to do it and it was barred from him. He was barred from accessing it. Where's that in the record? In his deposition, which Coca-Cola supplied. But they went through that part of it. But you're right. I mean, it does show a skeletal resume, but Mr. Zelaya's testimony was he tried to reaccess it and was barred from doing it. But in terms of the releasable list, yeah, Coca-Cola gave higher ratings to the Caucasians who were either in their early 20s or Craig Miller who was 15 years younger, significantly younger. But those ratings, one, are completely subjective on it. Two, Mr. Zelaya... So I asked Ms. Hufford, what are some of the reasons? Why were these people done? She says, well, Mr. Miller passed the assessment test. Well, he was on the releasable list before they ever did an assessment. Plus, he didn't qualify for it. He didn't have a four-year degree, which was required, but he gets promoted. Katie Clutas, she is not on the releasable list. The big problem for this is, how does she get promoted? She didn't know how she got promoted. Ms. Hufford said she didn't. Mr. Burns said he didn't. So Coca-Cola has no answer. How did Katie Clutas get promoted?  There's nothing there at all in the record for this. And that was really what started it with Mr. Zelaya, because he sees her getting promoted. He considered himself to have been a better worker in terms of performance. And then he goes in to complain to Beth Hufford, and Beth Hufford says, performance has nothing to do with being promoted. You can sell 200 new outlets, you're not going to be promoted. Well, production. That's right. Not performance. They never said performance has nothing to do with it. Mr. Zelaya always said, hey, I'm a really high producer. And their response always was, production has to do with bonuses. It doesn't have to do with – that was their response in the record is what I saw. I believe Ms. Hufford – I believe Mr. Zelaya used the word performance, but we're talking the same thing as the production in terms of the numbers, the quantification of his performance. And so she says, all of a sudden, well, now it's how we evaluate these skill sets. And so I asked her in her deposition, what skill sets did he lack? And she says, well, multiple buying influences, meaning within an organization you deal with more than one person. Being able to do the analytical skills, which is assessing profitability. I go to the prior supervisor he had for almost 10 years, Bill Wolf. Bill Wolf said he had all those. In Mr. Zelaya's declaration, he gives concrete examples. He had those skills. It's not conclusory. It's not someone saying, I do have these skills. He comes up and says, this is in particular what I did to show these skill sets. And we have his former supervisor saying he did have these skill sets. And that's the problem with Coca-Cola's position is they are inconsistent on the management level. If I ask the managers, does he have these skill sets, you get different answers. What you might do – I know your time is running down and you want to save for rebuttal. We're going to review this following precedent. So there's no doubt about it. He was working for the company. He wasn't considered for promotion. They gave reasons. He says pretext. And what do we do when we get to that point? Then you look at whether he has presented enough information to show that their justification is not credible. And one way you can do it is to show that their reasons are inconsistent. And one way you do it is show they changed position. Another way is you show the managers gave inconsistent stories. And I went through it with Beth. Well, one way is to show that the people that got it weren't better qualified, right? And I don't think this record shows that. But it's subjective. And we did challenge it. This is the problem when you have a purely subjective mechanism. They say, well, you didn't have these skill sets. All right, how do you challenge it? Well, you go to the prior manager who says, yeah, he had those skill sets. So I think we've raised the issue on that. It's enough to get to a jury on it, Your Honor. All right. Do you want to reserve your time? Yes, thank you. Thank you. Excuse me. Good morning, Your Honor. My name is Lonnie Williams, and I am here on behalf of the Coca-Cola Company. Let me first address some of the questions. One of the basic— You seem to be pretty much in the pretext area. We are in a pretext—thank you. We are in a pretext area. And one of the problems is that the appellant has not addressed in this appeal one of the primary problems that led to the granting, and that is the facts that he attempts to rely on in many situations are not admissible facts. They are based on either misstatements of the record or based on no citation to the record. And the court, in his order, after we filed a detailed motion to strike, agrees with us. When the appellant comes here, he says, We're not going to address that because the court did not specifically tell us what facts he believed were not based on personal record. I would submit to you this is a de novo appeal. If those facts were not correct or if our position were not true, what would the appellant do? He would point out to this court in detail that the paragraphs the court referenced are based on personal facts. They are based on the record. For example, he told you a moment ago that all of these supervisors had different opinions about how things worked. The record shows that one of these supervisors said, I don't recall how it worked. I've not been in that position in a number of years. It was an issue of not having a recall in terms of that. He says these people weren't on the readiness list. There is ample testimony in the file that's uncontroverted that they were. The second problem with that was a surprise to me when he said they weren't because the way that counsel for the appellant said that all of these people that promoted were not on a readiness list. What is in the record on that? In the record is affidavits from the supervisors who were there at the time who say that they were on the readiness list either when they came into the position or they were moved to the readiness list. That testimony is not challenged. What the appellant has done is there is one page of a readiness list that is contained in their, I don't want to say supplemental, their second appendix of the record that was filed with their reply. That is not discussed in their response to the summary judgment. It is simply one page of a document with no testimony from depositions, no nothing. He just has one page of a readiness list. That's not the date of the promotion. It's a document he's using to make that argument. But we have ample testimony in the record that they were. The second problem, Your Honor, is that he wants to ignore that there are three promotions at issues. We established that. The district court accepted it. Why? We have a window of 300 days from the time of the charge. We know what promotions he could have gotten, and we have gone through each one of them and explained. They want to ignore that for a good reason. One, the first one within four months of the assessment. No one's claiming these things were completely tied, but when you have an assessment by three people not making a decision on promotion that says you can do this job, but in order to be successful in it, and we're talking about the sales associate job, you need to do A, B, C, D, and E, and we're going to work with you on those. That's the first development plan. That's in May of 1999. Then the first promotion, September of 1999, he's still working on that development plan. We have the next promotion, which you've discussed, which I think they are conceding, which is the Burger King job. He did apply for the job. He was not chosen for the job. They challenged that below. We've shown that a more qualified Hispanic employee was chosen. Now we get to the third and final promotions. Those are in mid-2000. What happens between the period of the assessment and the first development plan? The record shows January 2000. There is another development plan that Ms. Hubbard, who is now a supervisor, and it's clear they don't get along, comes up with. In his own affidavit, the plaintiff, he says, paragraph 48, which is in plaintiff's appendix at 115, says we met in January of 2000, and basically he said to her, I'm not interested in your development plans. The next month, February 2000, is the dime incident, or that starts the dime incident. And then there's the memos. I would suggest to you that someone who, regardless of color, race, creed, who is wanting a promotion does not basically tell their new supervisor, I'm not going to follow what you've asked me to do, and doesn't put a dime on their desk and write the type of memos that are in the record. I think also in February 2000, I have that Mr. Zelaya complained about his review to Hubbard's manager, Pat Raglin, to confirm that high-scale members earn bonuses, not promotions. Correct. That was correct, and he was told that. All of that's in the record. And so we come to the final promotion that he has to challenge, and all of these other facts that have to weigh on whether or not he is equally qualified have occurred, and we have two others who don't have that. Now, let me clarify. Again, counsel says that Ms. Hufford says that you had to have a certain qualification or a certain rating to be on the list. The record shows what she said is that I did not put anyone on the readiness list who didn't have at least this. She didn't say it was a company policy, and the people that counsel was referring to who had lower ratings were not from this region and not from Ms. Hufford. So, again, it comes down to many of the questions that are raised are not based on personal knowledge. They're not based on admissible evidence, and appellants have just chosen to ignore that issue on this appeal. Well, now, the two that got hired in May would be Lisa Hess, who was Caucasian, age 25, hired as an essay after completing college in 1999, and Craig Miller, Caucasian, age 41, hired as one of the original lambs with Zelaya in 1990, did not complete a four-year degree. That is correct. And they were hired to AE positions. Yes, they were promoted in, I think, May or June of 2000 to AE positions. That is correct. And unless you have any questions, I have nothing further. Thank you. Thank you. Thank you, Your Honor. I want to point out just real briefly, in terms of Mr. Williams' claim that the record, that my brief or argument is filled with misstatements, I went through our reply brief and showed that I had accurately cited the record. If you look to our objections to the facts in our own statement of facts before the district court, we cited to the record for every single factual claim. This is not a question of where the record was not referenced. It was referenced, and it was referenced correctly in every occasion. In terms of the releasable list, I want to clarify something. Can I call it the readiness list? Are we talking the same thing? Yes. Releaseable list, and they interchanged the words. Katie Clutis was not on the list. We've asked them. They haven't produced one that shows she was on the list. What they've said is, well, she was on it. So Beth Hufford says, she was on it, so I promoted her. Well, what Beth Hufford says, she did not put Katie Clutis on it. Her prior supervisor was Michael Byrne. I asked Michael Byrne. Michael Byrne did not put her on it. He didn't even know about the list. So you have this huge factual issue staring right at the court as to how did Katie Clutis get promoted. How did this happen? Because there's nothing in the record to show what happened. And you just heard Coca-Cola admit it's completely discretionary because they're now conceding that Beth Hufford makes up her own rules as to who gets on the releasable list. Is there anything in the record that you're saying you don't know how she got on the list? Is there anything in the record that says she was not on the list? Or are you just inferring that from you asked, did you put her on the list? Did you put her on the list? The list from that time period I don't believe lists her. But we know that Hufford said she did not put her on and Michael Byrne said she did not put her on. And Katie Clutis didn't really know about the promotion. She was just advised about it. And what we have here is a form of an old boys network. If Ms. Hufford doesn't have a company policy to follow for how someone gets on the releasable list, she just does it on her own. And it just turns out that the only people she put on the list were young Caucasians across the board. That's how it happened. That is how this played out. Well, okay, but the man that was hired last was 41. He's 15 years younger. All right, but I don't think that's, sadly, I don't think 41 is considered young in terms of age discrimination cases, right? Your Honor, the test is whether there's a substantial age difference. And that meets that criteria. Fifteen years is a substantial age difference. So he meets that criteria. I also want to turn to you may want to emphasize your rebuttal to the legitimate reasons they gave for promoting one and not promoting the other. All right. The last. As I understand your argument, you're saying you made a problem face the case. Well, we say, all right, they did. Then they've given reasons which they think are legitimate. And you have to say they're not. I believe we have by showing that the reasons they gave as to why he is not on the releasable list, don't hold up when we question them about the specific reasons. It's not whether is he on the releasable list and therefore not qualified. You have to look underneath it and say, why isn't he on the releasable list? And they did not give consistent stories. They contradicted each other on the record. And it wasn't a manager saying, I don't recall. It was a manager saying, he had those skill sets. Period. He had them. You have a manager saying he's not on it because he did not perform the assessment development plan. You have another manager saying that there was no relationship between the assessment and promotions. There was not one explanation that was given by Beth Hufford that was not contradicted by her own managers, her own co-managers. All right, thank you. You've used your time. Thank you. All right, this matter will now stand submitted.
judges: Farris, Tashima, Callahan